Our next case up is 411-0877. The CMS Inclusion Control Board v. Labor Relations Board, etc. It's for the appellant, Lawrence A. Weiner. You are he, sir? Yes, sir. And for the appellee, Eric Truitt and Gail Murzowski. Is that pronounced correct? Okay. Will you both be arguing? Okay. Have you talked to the clerk about dividing your time? We have not spoken to the clerk. We've spoken to each other. Sorry. Well, let's do it now. How much time are you each going to take? Pardon? Ten and ten. Okay. Ten and ten. Then the clerk will sum up everything. Okay. Without any further ado, Mr. Weiner, you may proceed, sir. May it please the court. Counsel. No matter how you slice or dice or saute the facts in this case, what remains is the fact that the attorney assistants not only make recommendations to the PCB board members, but they actively participate in a hands-on way in the formulation and effectuation of the PCB's legislative rulemaking and quasi-judicial enforcement proceedings. This is a small agency. They employ 26 people. Out of the 26 people, 16 are already union, I believe, AFSCME members. So you have ten people left, four of whom are at issue in this case. And what the evidence shows is that these people are integral players. They actually, even more so than like in the ICC case where you have ALJs making recommendations to the board, or in the city of Chicago case, Chicago lawyers making recommendations to the mayor. That's a little more analogous, and that's why it's that primary case. These people, this is an intimate agency, and these people are integral players. In the running of the agency, and in essence the running of the show, in fulfilling a major component of the PCB's functions, statutory responsibilities. They work together as a team, either with the board members or with other assistants, so it's an integrated process. They have a close working relationship. Everybody there does. These are undisputed facts. They're in a cohesive unit. They act in tandem. However, whatever words you want to say, they're part of the team. They're part of the team that actually, unlike making a recommendation, they actually formulate that policy in a way by participating in the formulation of it with their board members and the other attorney associates. So they're a managerial stepladder. They're a step higher, I believe, than the ALJs that were considered in the ICC, and as well the Chicago lawyers. In the case that we rely upon mostly. The ICC case basically says that they don't even have to formulate policy, much less be the final arbiters in the formulation of policy. They have to make recommendations. They have to effect policy. The response by the board and by the union is, well, just having a divided loyalty is insufficient, and the ultimate determination is made by the board member as to what his position will be, and then by the board itself as to a majority vote on the Somebody is above you in the process doesn't mean that you haven't formulated it or participated in the formulation, nor does it mean that even on a lesser scale that you've effectively effectuated policy. It's interesting in the city of Chicago case, the court notes that first the organization on 1022 of 202 Illinois at third, first the organization of the law department does not have any professional authority structures contemplated by the act. The record is complete with continual references to the collegial nature of law department. Although divisions exist, it's clear that all of the attorneys work in multiple areas. The makeup of the law department leads us to a conclusion that the law department necessarily functions as a single cohesive unit in which tasks are assigned as a team, in team fashion, without any concern for recognition of formal management union division between attorneys. And there they also had the same kind of recommendation relationship with the mayor and the aldermen, where they gave advice to them, many of the assistant corporation councils, in a number of and made recommendations. Now the argument is, well gee, you haven't produced evidence that they have to, but they're successful in their recommendations, and there's no evidence of record on that. In the ICC case, which this court remanded, I might say the administrative hearings were held and we received a recommended decision in order in the ICC case from the administrative law judge recommending their exclusion from the very recently to inform the court. Why? Because they were managerial. Why are you informing us of that? Because I'm citing to the case, and I wanted to advise the court. This was this court's case, and it was remanded, and I wanted to advise the court. And we've been waiting diligently and with great expectation to hear the result before the ALJ? Well, the ILRB still has the, is going to consider the recommendation to come out with this order. But if that happened, I would also advise, I felt as an officer of the court, I should advise you of that. There are all kinds of things that are happening out there that aren't particularly pertinent to the issue before us here, Mr. Warner. You're absolutely correct, Your Honor. Absolutely correct. In any event, we rely upon the City of Chicago. We rely upon, of course, the dissent, which I think speaks for itself, and referring to a diffused authority structure within which the employees at issue have an opportunity to work very closely with top management. But let me get back to the point I was raising. The point I'm raising is that in the ICC case, this court remanded because they didn't know how effective the recommendations would be. That is, the number of recommendations that were made and the number of recommendations that were accepted. That was the issue to be determined on remand. And the union and the board, there's no evidence of that nature that was presented before the ALJ. The reason there was no mention of that is because it's not like an administrative lodges where you can have a statistical batting average, you know, runs on, runs off, hitting procedures, whatever. In this case, they are part of the process. They are part of the process. The hearing officer analogizes it and the ILRB calls them clerks. I think they're way beyond the clerks. They're attorneys. They advise the many other managerial functions. One is an ethics officer. One is a liaison, legislative liaison. All of them appear and testify and try to enforce proposed regulations for JCAR. These are all managerial functions. But the thing is, it's not like a batting average where you can say, well, gee, this recommendation, this case was accepted. Because they are formulating the rule. They are formulating the decision by the Pollution Control Board with their member and with the other assistants that they work with. So it's like a team effort where they get this done. And yes, it's always subject to their members' willingness and acceptance of their recommendations or their suggestions in this process. Of course, the board member has the authority to determine what that board member will vote on and what in that I think this court made clear that you didn't have to be even the final, have formulated policy, much less be the final formulator of that policy. And referring to Yeshiva, and Yeshiva is a very significant case because it sort of involves what we're talking about here. In Yeshiva, as your honors, in Yeshiva, there was a reference to the National Labor Relations Act. And I know your honors are familiar with this case, but the National Labor Relations Act only defines employees as being exclusive employees, as being supervisory or professional. There is nothing, zero, in the Act about managerial employees. The Supreme Court, on pages 682 and 683 of 444 U.S., says in dealing with the Yeshiva University members, These employees are, quote, much higher in the managerial structure, close quote, than those explicitly mentioned by Congress, which, quote, regarded them as so clearly outside the Act that no specific exclusionary provision was thought necessary. Managerial employees must exercise discretion within or even independently of established employer policy and must be aligned with management. Although the board has established no firm criteria for employees so aligned, normally an employee may be excluded as managerial only if he represents management's interests by taking or recommending discretionary actions that effectively control or implement employer policy. So Yeshiva basically created an exception based upon divided loyalties that exist. And all you had to do was effectuate, by taking or recommending discretionary actions that effectively control or implement employer policy. That's what these people do. They do both. They formulate it with their board members and other assistants and they effectuate or implement, our statute says effectuate, the Supreme Court says implement employer policy. This court itself, even in the case that's cited by everybody, which was the Department of Healthcare and Family Services Bureau Administrative Litigation case, had this interesting dicta in dicta at page 337 of 388 Illinois appellate period. The administrative law judges and hearing referees preside over administrative hearings and write recommended decisions. The staff attorney in the Office of General Counsel, quote, rules on, close quote, the recommended decisions of administrative law judges and the exceptions there too. Here's the key language. While the attorneys in the Bureau of Administrative Litigation are expected to be advocates, the attorneys in the Office of General Counsel are expected to be impartial decision makers. The integrity of the adversary system demands a rigorous segregation of those two functions. And here there has to be a rigorous separation of the functions of the board members working together to formulate and effectuate the rules and to formulate and effectuate the decisions relating to the enforcement of those rules, which are the two statutory functions of the pollution control board. In the city of Chicago, the court held that the case was unique. And it is unique. And this is unique. This is a unique case, which should result in these particular employees as being excluded and not a part of the bargaining unit. It's an intimate relationship. It's a confidential relationship. And I don't know if they concede, but they seem to argue that, I mean, based upon their arguments, one might conclude that they recognize that there would be divided loyalties, they meaning the attorney general and the union. If they aren't conceding that, and I don't hold them to it, then that's fine too. But there would be divided loyalties here. Exactly the type that was dealt with in ICC, by this court, by Yeshiva, by the Supreme Court of the United States. And they say, well, gee, you still have to be a manager. True. And the facts here show that these people are part of the management team. Thank you. Thank you, counsel. Mr. Truitt, you'll be first? May it please the court, I'm Eric Truitt, assistant attorney general for the Illinois Labor Relations Board. The board's position in this matter is that the relevant consideration for a managerial employee is provided by the statute, not by general public policy concerns drawn out of snippets of, you know, federal and state labor law cases. You notice that during the presentation of the employer, there's very little reference to the actual criteria in the statute. Now, it's true that in the federal system, the managerial exclusion was adopted as a matter of federal common law, but in Illinois, we have a statutory exclusion, and therefore, it's important to focus on the language of the statute and not the general public policy concerns that might have informed the federal rule. Let me raise this question. To what extent are there differences in the roles played by the attorney assistants in the litigation before us, and those typically played by judicial law clerks? There are similarities, to be sure, but I think most judges would... What are the differences? Well, it would depend on the particular judge-clerk relationship. For example, here, there was testimony that all of the board members were careful to retain their authority. There was specific testimony about the nature of the drafts. Obviously, each judge is going to have a different relationship with the law clerk. This is something we're real familiar with. Yes, of course. And it's our names that appear. Not only do the law clerks' names not appear, we may have been involved in drafting, but typically, no one even knows who they are, other than there's a sense that they must be out there someplace. You know, we don't, as judges, turn the matter over to our law clerks and just say, whatever you decide, and then send it in to the public court. So I'm not sure what difference you're trying to cite to us here. Well, our position is that, and the board's cases show this, is that there's sort of two ways to show a managerial authority. You can show formal authority, or you can show that there's sort of a practice such that even if they're not wielding the actual authority, they're making recommendations that are adopted as a matter of course, such that even if they don't formally have the authority, they, in reality, are exercising the same kind of authority. Here, it's clear that the attorney assistants do not have any formal managerial authority. They don't set budgets. They don't make hiring and decisions. They're not able to vote on matters. And as to the effective authority before the board, it made no showing of proof as to how often the board members were relying, either quantitative proof that you found in the ICC case, or even testimony from the PCB members as to, generally speaking, how much they relied upon the attorney assistants' recommendations without making substantial changes themselves. Well, I didn't want to interrupt you because I wanted to give you an opportunity to say what you had to say on your own terms. Now, let me go back and ask you the same question, because you haven't yet addressed it. Give me an example of what difference, if any, exists between the attorney assistants in the case before us at issue and the role played by judicial law clerks. I mean, generally speaking, they are analogous. But again, a judicial law clerk does not exercise the formal authority of a judge. So, say a judicial law clerk... The attorney assistants in this case? The attorney assistants in this case do not exercise the formal authority... They're essentially researchers, advisors, consumers of briefs and arguments, and they consult with and advise the PCB members, do they not? That's correct, yes. How does that differ from our law clerks who have worked on this very case? I mean, I think that the similarities are, in our position... Well, the reason I ask is, are we likely to see the UAW show up at our chambers to organize my law clerks' council? Will that be next week's action, if we were to affirm what happened here? If not, why not? Well, it would depend on... Certainly, under the formal authority line of analysis, law clerks would not exercise any formal authority. There would obviously be great difficulties in trying to show, in dealing with a judge, that a law clerk was, in practice, exercising all of the authority of a judge, even if, you know, as a formal matter of authority, they didn't have that authority. So the answer is, the ILRB can see of no reason why the judicial law clerks shouldn't all be organized and will just be teamsters, number 767, working out of my chambers, my two law clerks. Would that be correct? No, what I was saying is that, in terms of trying to show that they were managerial, you would first look and see if they were exercising the formal authority of the judge. And you'd say, no, they're not exercising the formal authority of the judge. And then you would look secondarily at whether they're exercising the sort of practical authority of the judge, and that would be a case-by-case determination based on, you know, the particular facts. Well, except that then you've got, are there five members of the board? Yes. Okay, so four of them understand how judicial law clerks work, and four of them use their attorney assistants in that way. The fifth, either because he or she is misanthropic or thinks more of their own abilities than anyone else, doesn't use the clerk that way, doesn't use the attorney assistant that way. Does that mean you go in and decide as to each one, whether their job description and the duties that you would normally expect them to do depends upon the personality of the person they're working for, or does it depend upon the authority that appears to be vested in someone who has that role? However, the board member decides to use them. Well, the, I mean, the attorney assistants, the actual authority that's vested in that role is relatively limited. They're, you know, they're designated to be, you know, advisors. Sounding boards, better to use that word, but that's, sounding board, brainstorm, research, write, rewrite, edit, talk to, think through, analyze, piece together, take apart, that's what they do, isn't it? I mean, that sounds like what they do. I mean, under the terms of the act, they would be designated professionals who provide technical expertise. Now, certainly the employer can always make an argument for the managerial exclusion based on the particular facts of the case, that the way this relationship is operating in practice, that they're, you know, they're wielding the authority of a manager. But their basic job description is one of a professional, someone who provides... Go back to the scenario I mentioned. You're talking about the individual... The four and the five. Four use them just the way that we've used judicial law courts. The fifth uses them in a more limited way. But the organizing is for, we want, these five people want to belong to the union. So we'd be in a position where four of them could, might be, Mr. Weiner prevails managerial, but the fifth one's not? That does happen from time to time based on, I mean, we've had other cases, you know, based on the job responsibility that one employee takes on in addition to the other employees. But that's in, within a, yeah, in a department or division, but this is a quasi-judicial board. They end up acting as a unit, don't they, in a way? I mean, there is a, you know, the decisions are made by a majority vote. Right. So... That's somewhat different than this attorney assistant or this arguably managerial employee giving this kind of advice to this deputy department head versus somebody else functioning differently for this other deputy department head. Well, there's an example of a case that I had in this court recently. There were two employees who had exactly the same job title and exactly the same agency, and one was found to be excludable and the other was not. So it does happen. But we don't like for you to cite our own cases back to us. That's awesome. Let me ask Joe, let me ask this question kind of reversed. If we were to affirm in this case, what argument would prevail on why judicial law clerks shouldn't be similarly subject to being unionized? I mean, that does put me in a somewhat awkward position of trying to predict the arguments that advocates would make before the board. Well, just invent one on the fly. I mean, this is what you do. I mean, there are plenty of court personnel who are members of bargaining units. That's why I specified judicial law clerks, not second clerks. Judicial law clerks, I mean, it would also depend on whether they were term or career employees. Would it? I assume there would be issues. So, I mean, if you just got someone for two years, they're capable, or is it, I don't know, the length of term would matter? You know, you're asking me to speculate as to what arguments might be made, so I'm trying my best to speculate. Well, leaving aside length of term, what argument would you make based upon the duties they perform as to why judicial law clerks aren't capable of being unionized when the attorney assistants in this case are? I mean, under the managerial exclusion, you know, the basic, if we take just kind of a generic idea of a law clerk, under the managerial exclusion, at least looking at it without any particular facts, it doesn't seem like law clerks would be excluded. Now, there might be particular facts. It doesn't seem like they would be excluded under that? I mean, if you look at the two statutory criteria, they're not predominantly engaged in executive management functions, and they're not responsible for directing the effectuation of policies. So I should expect the knock on my door to come next week? Is that the bottom line? Not necessarily. Again, I mean, I think that might be better aimed at the advocates instead of the board. Okay, well, your time is up. We'll give you an opportunity to address this again in rebuttal. I misspoke. That's correct. You're the appellee. No rebuttal for you. But your counsel will be given an opportunity to speak. Thank you. Thank you, Your Honors. Gail Marsalski of Cornfield and Feldman with the Appellee Union. I'd like to actually start by answering your question. Sure. Between the difference between a law clerk for this court and what the administrative assistants do. And frankly, it's right straight out of the testimony of the chairman of the Pollution Control Board. And he said that it's their main function to advise the board members on legal technicalities, because those board members are not necessarily attorneys. That's the difference? It is certainly one huge difference, because they're approaching it from a scientific approach in terms of their statutory responsibility. They are not approaching it as lawyers who are reviewing both either the rulemaking or the cases. I mean, he was quite clear in his testimony in what are we looking at here in any case, but what the actual activities of the employees at issue are. And according to the chairman of the PCB, their main function is to advise the board members on legal technicalities. Have you ever been a law clerk, counsel? No, I have not. I can't answer that question. I wasn't either, but I've been an appellate judge for a long time. And if my clerks were not in the business of advising me on points of law, they'd be sitting around an awful lot. Well, again, I understand what your honor is saying. All I'm saying is I do believe there is a difference between a judge who is coming at a case from the same perspective as what the law clerk would be, versus here where I think you have two separate perspectives. Well, it seems to me that this distinction that you're drawing seems to me to make them more managerial. Because we have to assume that the board member would follow the legal advice on technicalities, whatever those are. I thought the law was, you know, all of it was the same, whether it's technical or not. They're going to advise them on it. They're going to explain it to them. They're going to strongly suggest to them that if you want your decisions to be upheld and to have public credibility, that you follow the law and apply it to the facts in the right way. I mean, it's almost as if they, because here we get that advice, but we sometimes might pick a law clerk that's the exact opposite from us, to give us contrarian views so that we can see the other side. So, conservative versus liberal, or liberal, you know, whichever. Whereas here, if I'm the pollution, I want this attorney assistant to keep me on the straight and narrow with the law because I'm not a lawyer. More reliance, in other words. Greater reliance. I understand about the reliance, but that's not, the requirement is not that you don't rely on somebody who works for you, whether it be an attorney assistant or an executive secretary or a clerk in the clerk's office. The argument is, do they exercise the discretionary authority on your behalf? So, here, because the Act provides, and contrary to what counsel said, so does the National Labor Relations Act, that professional employees, professional employees are public employees within the meaning of the Act. And they are expected to use a consistent, this is right out of the Act, consistent exercise of discretion in terms of their profession. Their duties are not routine. They are specialized. That is the definition of a professional employee. These are attorneys. Yes, that is what they do. They give advice as to the law. The difference here is that the board members take ownership of the case, both in terms of contested cases and rulemaking cases. They do not allow the attorney assistant to exercise discretionary authority on their behalf. And I would also like to point out that neither, well certainly not the union, I will say, I'll put it that way, does not concede that there is an issue of divided loyalty. There is no issue of divided loyalty. Because the professional interests of the employee can be separated from those of the employer. It is not the interests that they are dealing with are issuing decisions, writing up decisions, and the employer, meaning the PCB, are the ones who are making that determination. Voting, not voting. Changing, not changing. Let me be more explicit. I want to ask you the same question and ask this the truth. Sure. If we affirm in this case, what argument would you make for why judicial law clerks aren't subject to unionization? I don't know what the day-to-day activities of judicial law clerks are in order to make that decision. Or to make that argument. Well, you pretty well described it. They advise us, the sounding boards. You heard Justice Connacht. That's pretty much what they do.  I guess all I can say is the way the Act is construed and set up is that it makes a big difference as to what the actual duties of the employees are. I have heard what you've described as the actual duties of the employee, how they relate, what the recommendations are, how you go back and forth. I don't know. So under the Act, I can't say whether or not they would or would not be considered managerial employees. So you could have a law clerk, if I never followed their recommendations, because my benchmark was I should always do the opposite of what my clerk tells me, they would not be, they could not possibly be a managerial employee, but whereas one that I totally trusted and had the same outlook on cases in life and found their worth or their work more persuasive, and I always followed their advice, always being, most of the time saying, they would be closer to a managerial employee. Well, it depends on how you look at effective recommendation and exercising discretionary authority. Do I think that it is parsed down to what one, two people have the exact same kind of position, so not different positions in an agency where one is given, has one supervisor and one another in a different department. I don't know that the board has ever come down to that level. Well, let me help you. They have no authority at all. Your law clerks? No authority at all. They exercise no discretionary authority on your behalf? Right. Then, as far as I can tell, they are not managerial. So I can expect a knock at my door next week. Here's the petition. You seem to have escaped thus far, Your Honor. Well, they might not have realized that the onerous working conditions under which they are laboring could be subject to collective bargaining. Okay. Let's see. To wrap up, I guess, after that. So, it's our position that the board obviously made the correct decision, certainly not clearly erroneous. Here we have a group of attorneys who use their professional expertise in order to draft opinions and work with a particular board member. We do not believe that they exercise discretionary authority, nor does the record support that. And certainly, their interests are not such that there would be an issue of divided loyalty. We would ask that the board be affirmed. Thank you, Counsel. Thank you. Mr. Weiner, any rebuttal, sir? Always, Your Honor. Okay. Last word. Okay. Really quickly, the testimony was that the duties of the attorney assistants are similar for all the attorney assistants to board members. There was a reference to advising the board on legal matters, and that was a transcript 19 and 20, which basically said, however, the attorney assistants to the board are historically attorneys because, quote, that has been the organization that has worked best many times. Board members are not attorneys themselves, so the assistant functions to advise the board member on legal technicalities because many of our enforcement cases are decided in a very court-like fashion, so we need to make sure we're doing everything legally. And lastly, in this regard, there is a position description at page 11 of our brief, which is at R3C123-124, which sets forth the functions and duties and responsibilities of the attorney assistants, and it far exceeds the attempted diminution of functions and powers that they're just giving legal advice, although they do that. And I believe that, you know, this is a one-on-one relationship, just like with Your Honor's clerks, and very confidential, very intimate in a classical sense, and I feel that I suggest to the court that there's really two cooks preparing these meals, these terminations of the board members, and that's the attorney assistant and that's the board member, and that's how the opinions are formulated. I'm sure there are many, like your judicial clerks, there are many suggestions or recommendations that are accepted by the board member, and probably the converse is equally true. But this is a joint product. This is a team product when you put in the other assistant, attorney assistants. And in doing that, they actually – this is crucial, you don't have to be the final arbiter – they actually are formulating policy, and certainly, absolutely, unquestionably, they're effectuating it. We – I assume Counsel and I both are saying it's the remaining issues we rely upon our briefs. The court would so indulge us. Okay. Thank you, Counsel. We'll be in recess for a few minutes.